**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| ANGELA LEE JONES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )       1:17CV703 |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of Social | ) |
| Security, | ) |
| | ) |
| Defendant. | ) |

## <u>MEMORANDUM OPINION AND RECOMMENDATION</u><br><u>OF UNITED STATES MAGISTRATE JUDGE</u>

Plaintiff, Angela Lee Jones, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entry 8 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 10, 12; <u>see also</u> Docket Entry 11 (Plaintiff's Memorandum); Docket Entry 13 (Defendant's Memorandum)). For the reasons that follow, the Court should enter judgment for Defendant.

## I. <u>PROCEDURAL HISTORY</u>

Plaintiff applied for DIB, alleging an onset date of October 15, 2012. (Tr. 230-31.) Upon denial of that application initially (Tr. 131-44, 160-63) and on reconsideration (Tr. 145-59, 167-70), Plaintiff requested a hearing de novo before an Administrative Law

Judge ("ALJ") (Tr. 171-72).[1]  Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing. (Tr. 43-84.)  The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 22-37.)  The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-7, 229, 318-21), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

1.    [Plaintiff] meets the insured status requirements of the [] Act through December 31, 2019.

2.    [Plaintiff] has not engaged in substantial gainful activity since November 12, 2013, the amended alleged onset date.

.  .  .

3.    [Plaintiff] has the following severe impairments: multiple sclerosis, migraine headaches, depression, anxiety, and cognitive disorder.

.  .  .

4.    [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

.  .  .

5.    .  .  .  [Plaintiff] has the residual functional capacity to perform light work . . . in that she can lift and/or carry 20 pounds occasionally and 10 pounds frequently; sit, stand, and/or walk 6 hours in an 8-hour workday; and push and/or pull as much as she can lift and

_____

[1] At the outset of the hearing before the ALJ, Plaintiff amended her onset date to November 12, 2013.  (See Tr. 25, 47, 256.)

carry. There are additional limitations. [Plaintiff] can frequently use hand controls, handle, finger, and feel with the left upper extremity. She can frequently climb ramps and stairs, occasionally climb ladders, ropes, and scaffolds, and occasionally balance. [Plaintiff] can only be exposed to unprotected heights and moving mechanical parts frequently, and she should not operate a motor vehicle at night. She is limited to performing simple, routine, and repetitive tasks but not at a production rate pace (e.g., assembly line work), and to simple work-related decisions.

. . .

6.   [Plaintiff] is capable of performing past relevant work as a cashier (II). This work does not require the performance of work-related activities precluded by [Plaintiff's] residual functional capacity.

. . .

In the alternative, considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are other jobs that exist in significant numbers in the national economy that [Plaintiff] also can perform.

7.   Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform.

. . .

11.  [Plaintiff] has not been under a disability, as defined in the [] Act, from November 12, 2013, through the date of this decision.

(Tr. 27-36 (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v.

<u>Barnhart</u>, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited." <u>Frady v. Harris</u>, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

## A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974). Instead, the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." <u>Hines</u>, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Hunter v. Sullivan</u>, 993 F.2d 31, 34 (4th Cir. 1992) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." <u>Hunter</u>, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility

determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." <u>Mastro</u>, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." <u>Id.</u> at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," <u>Hall v. Harris</u>, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" <u>id.</u> (quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the

---

[2] The Act "comprises two disability benefits programs. [DIB] provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." <u>Craig</u>, 76 F.3d at 589 n.1 (internal citations omitted).

adjudicative process, the Social Security Administration has . . .
detailed regulations incorporating longstanding medical-vocational
evaluation policies that take into account a claimant's age,
education, and work experience in addition to [the claimant's]
medical condition." Id. "These regulations establish a
'sequential evaluation process' to determine whether a claimant is
disabled." Id.

This sequential evaluation process ("SEP") has up to five
steps: "The claimant (1) must not be engaged in 'substantial
gainful activity,' *i.e.*, currently working; and (2) must have a
'severe' impairment that (3) meets or exceeds the 'listings' of
specified impairments, or is otherwise incapacitating to the extent
that the claimant does not possess the residual functional capacity
to (4) perform [the claimant's] past work or (5) any other work."
Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475
n.2 (4th Cir. 1999).[3] A finding adverse to the claimant at any of
several points in the SEP forecloses an award and ends the inquiry.
For example, "[t]he first step determines whether the claimant is
engaged in 'substantial gainful activity.' If the claimant is
working, benefits are denied. The second step determines if the
claimant is 'severely' disabled. If not, benefits are denied."
Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

---

[3] "Through the fourth step, the burden of production and proof is on the
claimant. If the claimant reaches step five, the burden shifts to the
[Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. See id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

jobs available in the community," the claimant qualifies as disabled. <u>Hines</u>, 453 F.3d at 567.[5]

### B. Assignments of Error

Plaintiff argues that the Court should overturn the ALJ's finding of no disability on these grounds:

1) "new and material evidence exists that has not been incorporated into the record because the [Appeals Council] used new law that was not in place at the time of the hearing or submission of the [Plaintiff's Appeals Council] brief and evidence" (Docket Entry 11 at 4 (standard capitalization applied and bold font and single-spacing omitted));

2) "the ALJ erred by equating moderate difficulties in concentration, persistence [or] pace ['CPP'] with a functional limitation to unskilled work" (<u>id.</u> at 12 (standard capitalization applied and bold font and single-spacing omitted)); and

3) "the ALJ's RFC is not supported by substantial evidence" (<u>id.</u> at 13 (standard capitalization applied and bold font and single-spacing omitted)).

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (Docket Entry 13 at 10-24.)

---

[5] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. <u>See, e.g.</u>, <u>Hunter</u>, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

## 1. New and Material Evidence

In Plaintiff's opening assignment of error, she contends that "new and material evidence exists that has not been incorporated into the record because the [Appeals Council] used [a new version of 20 C.F.R. § 404.970] that was not in place at the time of the hearing [before the ALJ] or submission of the [Plaintiff's Appeals Council] brief and evidence." (Docket Entry 11 at 4 (standard capitalization applied and bold font and single-spacing omitted).) In particular, Plaintiff asserts that she submitted to the Appeals Council "an outpatient neuropsychological consultation report from Dr. Myriam Sollman, Ph.D. ["Sollman Report"] . . . conducted on April 7, 2016, [which] precedes the date of the ALJ['s] denial and is not duplicative." (Id. at 8 (citing Docket Entry 11-1).) Moreover, Plaintiff contends that the Sollman Report qualifies as material, because a reasonable probability exists that the Report would have changed the outcome of the case "to at least a partially favorable decision with an onset date near the [Report] date." (Id. at 11.) According to Plaintiff, had the Appeals Council applied the prior version of Section 404.970, the Appeals Council would have incorporated the Sollman Report into the record. (Id.) Plaintiff requests a "remand[] for further administrative proceedings under either [s]entence [f]our or [s]entence [s]ix" of 42 U.S.C. § 405(g). (Id. at 12.) Plaintiff's contentions fall short.

The prior version of Section 404.970, in effect until January 16, 2017, provided as follows:

> If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the [ALJ] hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the [ALJ] hearing decision. It will then review the case if it finds that the [ALJ's] action, findings, or conclusion is contrary to the weight of the evidence currently of record.

20 C.F.R. § 404.970(b) (1987) (emphasis added). The new version, effective January 17, 2017, with compliance by claimants required by May 1, 2017, see Ensuring Program Uniformity at the Hearing and Appeals Council Levels of the Administrative Review Process, 81 Fed. Reg. 90987-01, 90987, 2016 WL 7242991 (Dec. 16, 2016), provides as follows:

> (a) The Appeals Council will review a case if—
>
> . . .
>
> (5) Subject to paragraph (b) of this section, the Appeals Council receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision.
>
> (b) The Appeals Council will only consider additional evidence under paragraph (a)(5) of this section if you show good cause for not informing us about or submitting the evidence as described in § 404.935 because:
>
> (1) Our action misled you;
>
> (2) You had a physical, mental, educational, or linguistic limitation(s) that prevented you from informing us about or submitting the evidence earlier; or

(3) Some other unusual, unexpected, or unavoidable circumstance beyond your control prevented you from informing us about or submitting the evidence earlier.

20 C.F.R. § 404.970 (2017). Thus, the new regulation adds two requirements to a claimant's burden to have new evidence considered for the first time at the Appeals Council level of review: (1) a requirement that a claimant demonstrate good cause for the failure to submit the evidence in question at least five days prior to the ALJ's decision pursuant to 20 C.F.R. § 404.953; and (2) a requirement to show a reasonable probability of a different outcome.[6]

Plaintiff first asks the Court to declare "that the Appeals Council applied the wrong version of [Section 404.970], and failed to appropriately incorporate [into the administrative record] the [Sollman Report]" and, as a result, to remand the case under sentence four of 42 U.S.C. § 405(g). (Docket Entry 11 at 11-12.) As an initial matter, doubt exists whether this Court possesses the authority to scrutinize the Appeals Council's decision not to incorporate the Sollman Report into the administrative record and/or to deny Plaintiff's request for review. Section 405(g) grants this Court the "power to enter, upon the pleadings and

---

[6] Long-standing Fourth Circuit law defined "material" as a reasonable possibility the new evidence would have changed the outcome of the case. See Meyer v. Astrue, 662 F.3d 700, 704 (4th Cir. 2011); Wilkins v. Secretary, Dep't of Health & Human Servs., 953 F.2d 93, 96 (4th Cir. 1991). Thus, the new version of Section 404.970 increases a claimant's burden from showing a reasonable possibility to a reasonable probability, and makes the obligation to show a reasonable probability of a different outcome an additional requirement to showing materiality.

transcript of the record, a judgment affirming, modifying, or reversing the [final] decision of the Commissioner [], with or without remanding the cause for a rehearing," 42 U.S.C. § 405(g). However, "when the [Appeals] Council has refused to review the case[,] . . . the decision reviewed in the [federal district] courts is the decision of the [ALJ]," <u>Eads v. Secretary of Health & Human Servs.</u>, 983 F.2d 815, 817 (7th Cir. 1993) (emphasis added). Thus, "[n]o statutory authority (the source of the district court's review) authorizes the court to review the Appeals Council['s] decision to deny review," <u>Matthews v. Apfel</u>, 239 F.3d 589, 593, 594 (3d Cir. 2001).

Even if this Court possessed the statutory power to review the Appeals Council's decisions to not incorporate the Sollman Report and to deny review, no basis exists for a sentence four remand. On May 25, 2017, over four months after the new regulation's effective date and 24 days after the date on which the Commissioner required claimants to comply with the new regulation, the Appeals Council issued its decision declining to incorporate the Sollman Report and denying Plaintiff's request for review. (<u>See</u> Tr. 1-7.) Plaintiff does not cite, nor can the undersigned find, any authority for proposition that the Appeals Council must apply a previous version of a regulation at the time it renders its decision.

Nor can Plaintiff demonstrate any unfairness arising out of the Appeals Council's application of the new regulation. On March

24, 2017, the Appeals Council provided Plaintiff with advanced notice of the regulatory change and an opportunity to submit additional evidence and argument directed at demonstrating a reasonable probability of a different outcome (see Tr. 9-10), an opportunity which Plaintiff did not take. Moreover, in that notice, the Appeals Council expressly recognized that Plaintiff could not retroactively comply with the new requirement under 20 C.F.R. § 404.953 that, absent good cause, claimants must submit evidence at least five days before the ALJ's hearing, and waived the requirement that Plaintiff demonstrate good cause. (See Tr. 10.)

In the alternative, Plaintiff argues that the Court should remand the case under sentence six of 42 U.S.C. 405(g), and order the Commissioner to consider the Sollman Report. Sentence six of Section 405(g) provides as follows:

> [A federal district court] may at any time order additional evidence to be taken before the Commissioner [], but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Commissioner [] shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and, in any case in which the Commissioner has not made a decision fully favorable to the individual, a transcript of the additional record and testimony upon which the Commissioner's action in modifying or affirming was based.

42 U.S.C.A. § 405(g) (2015) (emphasis added).

13

Here, even assuming that the Sollman Report qualifies as new and material, and relates to the period before the ALJ's decision, as argued by the Commissioner (see Docket Entry 13 at 16 n.8), Plaintiff has failed to demonstrate good cause for not submitting the Report prior to the ALJ's decision.  As an initial matter, although the Appeals Council waived the requirement that Plaintiff demonstrate good cause (see Tr. 10), this Court has an obligation, arising under Section 405(g) and wholly independent of the Appeal Council's good cause standard under Section 404.970, to find good cause for Plaintiff's failure to submit the evidence to the ALJ. See Matthews, 239 F.3d at 593 (holding that, "when the claimant seeks to rely on evidence that was not before the ALJ, the district court may remand to the Commissioner but only if the evidence is new and material and if there was good cause why it was not previously presented to the ALJ (Sentence Six review)" because "it is the Social Security Act and not the regulations that governs the standards for judicial review" (emphasis added)).

Moreover, Plaintiff has argued that good cause exists merely because she obtained her current counsel after the ALJ's unfavorable decision, who then submitted the Sollman Report to the Appeals Council.  (See Docket Entry 11 at 11.)  However, Plaintiff's retention of new counsel after the ALJ's denial does not excuse her failure to submit the Sollman Report prior to the ALJ's decision through her former counsel.  During the hearing

14

before the ALJ, Plaintiff specifically testified that she had an upcoming psychiatrist appointment on March 21[, 2016,]" and that her treating neurologist planned on scheduling Plaintiff for "[c]ognitive therapy." (Tr. 66.) Both at the outset and the close of the hearing, the ALJ expressed an obvious willingness to hold the record open for additional evidence:

| | |
|---|---|
| PLAINTIFF'S COUNSEL: | [Plaintiff] had a . . . neurology visit. They did an MRI. We don't have that yet. |
| ALJ: | Okay. Do we know the results of the MRI yet? |
| PLAINTIFF'S COUNSEL: | [Plaintiff] doesn't know. |
| ALJ: | Okay, so keep it open for two weeks for the MRI, or do you want longer than that? |
| PLAINTIFF'S COUNSEL: | We can start with two weeks. |
| ALJ: | Of course I'll grant you any amount of time you need. |
| . . . | |
| ALJ: | [W]hen we get the new MRI we'll take a look at it and I'm assuming we'll be able to decide the case. If not, if [Plaintiff's counsel] has anything to add she'll let me know. |

(Tr. 47-48, 83 (emphasis added).) Plaintiff indeed submitted that MRI after the hearing, and it appears in the record as the last page of Exhibit 12F. (See Tr. 568; see also Tr. 48 (reflecting that ALJ admitted Exhibits 1F through 11F at the time of the

hearing).)  As Plaintiff remained represented by counsel until 11 days after the ALJ's unfavorable decision (see Tr. 20, 21), good cause does not exist for Plaintiff's failure to submit the Sollman Report to the ALJ in the three months between the date of the Sollman Report (April 7, 2016) and the ALJ's decision on July 7, 2016.

In sum, no basis exists to remand this matter based on the Appeals Council's decisions under either sentence four or sentence six of 20 U.S.C. § 405(g).

## 2. CPP

In Plaintiff's second assignment of error, she contends that the ALJ "erred by equating moderate difficulties in [CPP] with a functional limitation to unskilled work." (Docket Entry 11 at 12 (standard capitalization applied and bold font and single-spacing omitted).)  More specifically, Plaintiff maintains that "[t]he [United States] Court of Appeals [for the Fourth Circuit] in *Mascio v. Colvin*[], 780 F.3d 632, 638 (4th Cir. 2015) notes that an ALJ does not account for limitations in [CPP] by simply restricting the hypothetical question to simple, routine tasks or unskilled work[,]" because "'[t]he ability to perform simple tasks differs from the ability to stay on task.'"  (Docket Entry 11 at 12 (quoting Mascio, 780 F.3d at 638).)  Plaintiff thus argues that the ALJ failed to account for Plaintiff's moderate difficulties in CPP by limiting Plaintiff to "'simple, routine, and repetitive tasks

16

[('SRRTs')] but not [at] a production rate pace . . ., and to making simple work-related decisions.'" (Id. (quoting Tr. 32).) Plaintiff has not established an entitlement to relief.

The Fourth Circuit has indeed held that "the ability to perform simple tasks differs from the ability to stay on task" and that "[o]nly the latter limitation would account for a claimant's limitation in [CPP]." Mascio, 780 F.3d at 638. However, that court also allowed for the possibility that an ALJ could adequately explain why moderate limitation in CPP would not result in any limitation in the RFC. Id. A neighboring district court had occasion to discuss this very point:

> Mascio does not broadly dictate that a claimant's moderate impairment in [CPP] always translates into a limitation in the RFC. Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain the decision . . . . An ALJ may account for a claimant's limitation with [CPP] by restricting the claimant to simple, routine, unskilled work where the record supports this conclusion, either through physician testimony, medical source statements, consultative examinations, or other evidence that is sufficiently evident to the reviewing court.

Jones v. Colvin, No. 7:14CV00273, 2015 WL 5056784, at *10-12 (W.D. Va. Aug. 20, 2015) (magistrate judge's recommendation adopted by district judge) (unpublished) (emphasis added); see also Hutton v. Colvin, No. 2:14-CV-63, 2015 WL 3757204, at *3 (N.D.W. Va. June 16, 2015) (unpublished) (finding reliance on Mascio "misplaced," because ALJ "gave abundant explanation" for why unskilled work adequately accounted for claimant's moderate limitation in CPP, by

highlighting the claimant's daily activities and treating physicians' opinions). Here, the ALJ's decision provides a sufficient explanation as to why restrictions to SRRTs, non-production pace work, and simple work-related decisions (see Tr. 30, 32) sufficiently accounted for Plaintiff's moderate deficit in CPP.

First, the ALJ discussed Plaintiff's testimony regarding her mental symptoms, including her claim that "concentration and memory problems contributed to her termination from previous jobs" (Tr. 29; see also Tr. 52, 275, 482), but found her statements "not entirely consistent with the medical evidence and other evidence in the record" (Tr. 31). Plaintiff has not challenged the ALJ's evaluation of her subjective symptom reporting. (See Docket Entry 11.)

Second, the ALJ summarized Plaintiff's mental health treatment, making the following, pertinent observations:

- Consultative psychological examiner Dr. Carla Duszlak "noted that [Plaintiff] performed 'reasonably well' on mental status tasks, with 'some' deficits in memory and concentration[,]" and Plaintiff "denied thought and perception disturbances that could affect her ability to concentrate" (Tr. 32; see also Tr. 484-85);

- Since the September 24, 2013, consultative examination with Dr. Duszlak, "[Plaintiff's] depression and anxiety has appeared to be 'stable' with medication" (Tr. 32; see also Tr. 524, 528); and

- "A mental status evaluation in 2016 revealed 'normal' recent and remote memory, along with

18

'normal' attention and concentration" (Tr. 32; <u>see also</u> Tr. 559).

Third, the ALJ discussed and weighed the opinion evidence as it related to Plaintiff's ability to function mentally. (<u>See</u> Tr. 33-34.) The ALJ accorded "great weight" to the opinion of Dr. Duszlak that, despite Plaintiff's complaints of trouble with concentration and focus, Plaintiff could perform SRRTs and work on a regular basis. (Tr. 33-34; <u>see also</u> Tr. 486.) The ALJ also gave "partial weight" to the state agency psychological consultants' opinions (Tr. 34), who each found that, notwithstanding moderate limitation in CPP (<u>see</u> Tr. 136, 150), Plaintiff remained "able to <u>sustain attention to complete a small variety of tasks at a semi-rapid pace</u>" and could perform SRRTs (Tr. 141, 155 (emphasis added)).[7]

Fourth, the ALJ's restriction to no work "at a production rate pace (e.g., assembly line work)" in the RFC (Tr. 30, 32) "reasonably related to a moderate limitation in Plaintiff's ability to stay on task," <u>Grant v. Colvin</u>, No. 1:15CV515, 2016 WL 4007606, at *6 (M.D.N.C. July 26, 2016) (unpublished), <u>recommendation adopted</u>, slip op. (M.D.N.C. Sept. 21, 2016) (Osteen, Jr., C.J.). In that regard:

---

[7] The ALJ noted that he accorded the state agency psychological consultants' "opinions partial weight mainly because they did not have the benefit of examining [Plaintiff] in person." (Tr. 34.) The consultants did not include a limitation to non-production work in their mental RFC (<u>see</u> Tr. 141, 155), as the ALJ did (<u>see</u> Tr. 30, 32).

> [T]he weight of authority in the circuits that rendered
> the rulings undergirding the Fourth Circuit's holding in
> <u>Mascio</u> supports the view that the non-production
> restriction adopted in this case sufficiently accounts
> for [the p]laintiff's moderate limitation in CPP.
> Moreover, that approach makes sense.  In <u>Mascio</u>, the
> Fourth Circuit held only that, when an ALJ finds moderate
> limitation in CPP, the ALJ must either adopt a
> restriction that addresses the "staying on task" aspect
> of CPP-related deficits (which a restriction to simple
> tasks does not, at least on its face) or explain why the
> CPP limitation of that particular claimant did not
> necessitate a further restriction regarding "staying on
> task."  Where, as here, the ALJ has included a specific
> restriction that facially addresses "moderate" (not
> "marked" or "extreme," <u>see</u> 20 C.F.R. § 416.920a(c)(4))
> limitation in the claimant's ability to stay on task,
> i.e., a restriction to "non-production oriented" work,
> <u>Mascio</u> does not require further explanation by the ALJ,
> at least absent some evidentiary showing by the claimant
> (not offered here) that he or she cannot perform even
> non-production-type work because of his or her particular
> CPP deficits.

<u>Grant</u>, 2016 WL 4007606, at *9; <u>see also</u> <u>id.</u> at *7-9 (discussing

authority addressing "non-production" restrictions).

Under these circumstances, the ALJ adequately explained why

restrictions to SRRTs, non-production work, and simple, work-

related decisions (<u>see</u> Tr. 30, 32) sufficiently accounted for

Plaintiff's moderate limitation in CPP.

### 3. RFC

In Plaintiff's third and final assignment of error, she

asserts that "[t]he ALJ's RFC is not supported by substantial

evidence, and is internally inconsistent with the objective medical

evidence."  (Docket Entry 11 at 13.)  In particular, Plaintiff

contends that "the RFC fails to take into account the impact of

exertional and other nonexertional limitations[,]" such as "balance and motor problems including grip strength problems on the left side" (id.) and fatigue (id. at 14). In that regard, Plaintiff challenges the ALJ's RFC for its inclusion of <u>frequent</u> exposure to unprotected heights and moving mechanical parts, and its omission of "how many extra breaks [Plaintiff] would need in an eight-hour work day[,] . . . how much off-task she would be due to her fatigue and concentration issues, or how much work she would miss each month or year due to the exacerbation of her [multiple sclerosis] symptoms." (Id.) Plaintiff's contentions fail as a matter of law.

With regard to unprotected heights and moving mechanical parts, Plaintiff has not shown how the inclusion of a lesser degree of exposure in the RFC would have impacted the outcome in her case. The ALJ found that Plaintiff could return to her past relevant work as a Cashier II (see Tr. 34-35), and the listing in the <u>Dictionary of Occupational Titles</u> (<u>DOT</u>) for that job describes "[b]alancing[,]" "[m]oving [m]ech[anical] [p]arts[,]" and "[h]igh [e]xposed [p]laces" as "[n]ot [p]resent", see <u>DOT</u>, No. 211.462-010 (Cashier II), 1991 WL 671840.

Plaintiff's argument regarding the RFC's failure to address extra breaks, time off-task, or work absences due to Plaintiff's fatigue, concentration issues, and multiple sclerosis exacerbations fares no better. As discussed above in regards to Plaintiff's second assignment of error, the ALJ sufficiently explained in the

decision (and supported that explanation with substantial evidence) that, despite moderate deficit in CPP, Plaintiff maintained the ability to perform SRRTs at a non-production rate pace with only simple, work-related decisions. (See Tr. 30, 32.) The ALJ also gave great weight to Dr. Duszlak's opinion that, despite issues with concentration and focus, Plaintiff remained able to work on a regular basis from a psychiatric standpoint. (See Tr. 33-34, 486.) Moreover, Plaintiff points to no treating or examining physician opinion that would support inclusion in the RFC of more breaks, time off-task, or absences than typically tolerated in a competitive work environment. (See Docket Entry 11 at 13-14.)

In short, Plaintiff has not shown grounds for relief with respect to the RFC.

### III.  CONCLUSION

Plaintiff has not established an error warranting reversal or remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 10) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 12) be granted, and that this action be dismissed with prejudice.

                          /s/ L. Patrick Auld
                        **L. Patrick Auld**
                **United States Magistrate Judge**

August 13, 2018